IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:   AMERICAN MEDICAL SYSTEMS, INC.,
         PELVIC REPAIR SYSTEM
         PRODUCTS LIABILITY LITIGATION                MDL No. 2325

THIS DOCUMENT RELATES TO:

*Janice Allen, et al. v. American Medical Systems, Inc.*
Civil Action No. 2:12-cv-01815

## MEMORANDUM OPINION & ORDER

Pending before the court is a Motion to Dismiss with Prejudice [ECF No. 17] filed by American Medical Systems, Inc. ("AMS"). The plaintiffs, Janice Allen and Franklin Allen, filed their Response opposing AMS's motion and requesting an extended briefing schedule [ECF No. 20], and AMS filed its reply [ECF No. 21]. Thus, this matter is ripe for my review. For the reasons stated below, AMS's Motion is **DENIED**.

## I.   Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are over 60,000 cases currently pending, over 4,000 of which are in the AMS MDL, MDL 2325. In an effort to efficiently and effectively manage this massive MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary

judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, at the court's request, the parties submitted a joint list of 351 cases in the AMS MDL that name only the AMS defendants or allege claims against only AMS's products. These cases became part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order # 222, *In re American Medical Systems, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02325, October 21, 2016, *available at http://www.wvsd.uscourts.gov/MDL/amsinc/orders.html*. The Allens' case was selected as a Wave 1 case.

Here, the plaintiffs are residents of Tennessee and Ms. Allen was implanted with AMS's MiniArc Sling in Knoxville, Tennessee. Am. Short Form Compl. [ECF No. 12] ¶¶ 4, 8, 11. On November 22, 2016, AMS noticed the deposition of Ms. Allen for November 29, 2016, at 9:00 AM. Response Ex. A. [ECF No. 17-1]. The deposition was scheduled to take place at Gibson Court Reporting, 606 West Main Street, Suite 350 in Knoxville, Tennessee. *Id.* The plaintiffs' counsel confirmed via email on November 23, 2016, and then counsel for both parties emailed again on November 28, 2016. *Id.* Ex. B. Counsel agree that on November 29, 2016, counsel for both parties appeared at the deposition, but that Ms. Allen failed to appear and, after the scheduled start time, informed her counsel by telephone that she did not plan to attend the deposition. *See* Def.'s Mem. Supp. Mot. to Dismiss [ECF No. 18]; Def.'s Mot. to Dismiss, Ex C [ECF 17-1] (Statement on the Record); Pls.' Counsel's Mot. to Withdraw [ECF No. 19]. AMS moves to dismiss the plaintiffs' case with prejudice for

failure to comply with discovery as set forth in this court's PTO # 222.[1] Def.'s Mot. to Dismiss at 1.

## II.   Legal Standard

Federal Rule of Civil Procedure 37(d) allows a court to sanction a party for failing to attend its own deposition. Fed. R. Civ. P. 37(d)(1)(A)(i) ("The court where the action is pending may, on motion, order sanctions if: (i) a party . . . fails, after being served with proper notice, to appear for that person's deposition.") Sanctions may include dismissal of the action and rendering of a default judgment, in addition to paying "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four *Wilson* factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces.

---

[1] In its introductory paragraph, AMS refers to Pretrial Order # 223 rather than # 222. This appears to be a typographical error.

Specifically, when handling seven MDLs, each containing thousands of individual cases, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"); H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See Phenylpropanolamine*, 460 F.3d. at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1232; *see also* Fed. R. Civ. P. 1. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *In re Phenylpropanolamine*, 460 F.3d at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune,

4

resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

## III.   Discussion

Pursuant to PTO # 222, the deadline for most depositions and the close of discovery for Wave 1 cases was originally May 19, 2017. PTO # 222. I subsequently amended PTO # 222 to extend that deadline to June 19, 2017. *See* Pretrial Order # 230, *In re American Medical Systems, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02325, January 12, 2017, *available at http://www.wvsd.uscourts.gov/MDL/amsinc/orders.html*. The purpose of depositions is to permit each party to develop and resolve the case in a just, speedy, and inexpensive manner. With 351 cases in Wave 1, it is necessary for parties to schedule and complete depositions in an orderly fashion on an ongoing basis.

Here, AMS provided Ms. Allen with notice of her deposition, to occur on November 29, 2016. The deposition was scheduled to take place in Knoxville, Tennessee, the city where Ms. Allen received her implanting surgery and the state where she resides. Through counsel, plaintiffs confirmed the timing of this deposition. Counsel for both parties traveled to Ms. Allen's deposition location at the scheduled time, however, Ms. Allen did not appear. She informed her counsel of her intent not

to appear only after the start time of the deposition. The plaintiffs' counsel has not provided any explanation for this absence.

AMS asks the court to dismiss the plaintiffs' case with prejudice for failing to comply with Pretrial Order # 222. Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that the plaintiffs should be afforded one more chance to comply with discovery upon payment of a monetary sanction.

The first factor, whether the plaintiffs acted in bad faith, is difficult to ascertain given that the plaintiffs have not explained the reason for Ms. Allen's failure to appear at her deposition. However, the plaintiffs' failure to provide any explanation—either at the time of the deposition or in their response brief on AMS's motion to dismiss—suggests that there is no good explanation. The plaintiffs' counsel confirmed receipt of the notice of deposition and continued to communicate with the defense counsel without providing any notice that Ms. Allen would chose not to appear at her deposition. This leads me to weigh the first factor against the plaintiffs.

The second factor—prejudice caused by noncompliance—also weighs in favor of sanctions. The purpose of depositions and orderly pretrial discovery in general is to permit the parties and the court to resolve matters in a just, speedy, and inexpensive manner. By depriving AMS of Ms. Allen's deposition testimony, the plaintiffs are depriving AMS of the information it needs to mount its defense. Furthermore, because AMS has had to divert its attention away from responsive

6

plaintiffs and onto Ms. Allen, her failure to appear has unfairly affected the progress of the remaining plaintiffs in MDL 2325.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with orderly discovery, or with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue.

Application of the first three factors demonstrates that this court is justified in sanctioning the plaintiffs. However, application of the fourth factor—the effectiveness of less drastic sanctions—counsels against the relief sought by AMS. In their response to AMS's motion to dismiss, the plaintiffs opposed AMS's motion and argued that they have a colorable claim. Rather than imposing the harsh sanction of dismissal with prejudice at this time, the court opts for a lesser sanction. The court will allow Ms. Allen one more chance to attend her deposition, subject to (1) her tendering payment to AMS reimbursing AMS for its reasonable costs and attorney fees incurred due to the missed deposition, and (2) dismissal upon motion by AMS, if she fails to do so.

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i–iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing over 4,000 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are qualified by the individual circumstances

of each case, nor would it be fair for the court to place this responsibility on AMS. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that affording Ms. Allen a final chance to comply with discovery, subject to dismissal with prejudice if she fails to do so, is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole. *See* Fed. R. Civ. P. 1.

## IV.   Conclusion

For the reasons discussed above, it is **ORDERED** that AMS's Motion to Dismiss is **DENIED**. It is further **ORDERED** that, prior to the close of discovery, AMS may re-notice and complete the deposition of Ms. Allen at a time of its choosing in Knoxville, Tennessee (unless agreed otherwise). AMS shall provide plaintiffs at least two weeks of notice prior to the deposition.

I **FIND**, pursuant to Rule 37(d)(3), that Ms. Allen's failure to appear for her deposition was not substantially justified and no other circumstances make an award of expenses unjust. Accordingly, it is **ORDERED** that AMS shall have through and including **February 27, 2017** to file an affidavit of reasonable fees and expenses incurred in preparing for Ms. Allen's original November 29, 2016 deposition, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). Failure to timely file the affidavit and supporting documentation shall result in a denial of fees and costs. The plaintiffs shall have through and including **March 13, 2017** to respond to AMS's submissions. The response shall include any justification that would preclude or reduce an award of

expenses, or, in the alternative, shall include a statement identifying the attorney and/or party whose conduct necessitated AMS's Motion. Failure to file a response shall be deemed an admission of or agreement with the representations and arguments of AMS. AMS shall have through and including **March 20, 2017** to file a reply memorandum. At the conclusion of the period allowed for briefing, the court shall either schedule a hearing, or simply rule on the request for reasonable fees and costs.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      February 13, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE